**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RALPH B. TAGLIATELA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-1755 (VLB) |
| METRO-NORTH COMMUTER RAILROAD | : | |
| COMPANY, | : | NOVEMBER 13, 2012 |
| Defendant, | : | |

## MEMORANDUM OF DECISION DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. #60]

Before the Court is Defendant Metro-North Community Railroad Company's ("Metro-North") motion for summary judgment.  The Plaintiff Ralph B. Tagliatela ("Tagliatela") brings this action asserting a claim for violation of the Federal Rail Safety Act ("FRSA") in connection with Metro-North's discipline of Tagliatela for allegedly violating Metro-North's policy requiring employees to immediately report a workplace injury and for failing to appear for a medical evaluation at a Metro-North's Occupation Health Services facility.  For the foregoing reasons, the Court denies in part and grants in part Metro-North's motion for summary judgment.

### Background

On July 1, 2008, Tagliatela filed a complaint with the Occupational Health and Safety Administration ("OSHA") claiming that Metro-North violated Section 20109(a)(4) of the FRSA when Metro-North disciplined him shortly after he reported a workplace injury.  [Dkt. #30, Ex. A, OSHA Compl.].  On July 8, 2008,

1

Tagliatela sent a letter supplementing his prior complaint with the additional information that Metro-North had recently reclassified his injury as non-occupational thus requiring him to pay his medical expenses through his private insurance including out of pocket co-pays.  [Dkt. #30, Ex. B, Letter].

Section 20109(a)(4) provides that a railroad carrier  "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done … to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee."  49 U.S.C. §20109(a)(4).

On June 18, 2009, OSHA issued a merit finding and order in its investigation of Tagliatela's complaint concluding that Metro-North had violated the FRSA.  [Dkt. #36, Pl. Ex. 17].  Metro-North filed objections to OSHA's order and requested a hearing before an administrative law judge.  While the matter was pending before the administrative law judge, Tagliatela brought the instant action in this Court requesting de novo review pursuant to Section 20109(d)(3) which provides that if the "Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States."  49 U.S.C. §20109(d)(3).

<u>Facts</u>

The following facts relevant to Defendant's Motion for Summary Judgment are undisputed unless otherwise noted.  Tagliatela was employed by Metro-North as a custodian.  [Dkt. #30, Def. Local Rule 56(a)(1) Statement, ¶5].  On April 12, 2008, he worked his full, regular shift from 7:00am to 3:00pm.  *Id.* at ¶¶6-7.  At approximately 1:00pm on April 12, 2008, while at working cleaning the Mamoroneck, New York station, Tagliatela twisted his knee causing it to buckle and causing him to limp.  *Id.* at ¶8.  Tagliatela worked until the end of his shift on April 12, 2008 and when he arrived home he iced his knee.   *Id.* at ¶¶9-10. Tagliatela did not notify his supervisors at Metro-North of this incident until approximately 3:15am the next morning when he called his supervisor.  *Id.* at ¶11. At the time of his injury, Tagliatela knew that Metro-North required all employees to report workplace injuries occurring on company property immediately to their supervisors.   *Id.* at ¶13.   Tagliatela drove himself to the Milford Hospital emergency room at approximately 3:30am on April 13, 2008 where he was met by Metro-North supervisor, Maria Kazik.  *Id.* at ¶¶15-16.  Tagliatela did not go to work on April 13, 2008 because of his knee injury.  *Id.* at ¶28.

Tagliatela asserts that he twisted his knee while picking up papers from the ground beneath a walkway at the Mamaroneck Station, when his left knee twisted as he slipped in a hole.   [Dkt. #36, Pl. Local Rule 56(a)(2) Disputed Issues of Material Fact, Section 5].  Tagliatela further asserts that he did not believe he had injured himself when he completed his shift as it was a normal part of his job to

experience various temporary strains or pains that went away without affecting his ability to report to work and perform his duties.  *Id.*  Although he felt some pain, it appeared to be minor and he believed it would soon subside.  On the evening of April 12, Tagliatela went to bed and woke up at 3:00am on April 13.  *Id.* He asserts that he did not know he was injured until he got out of bed and tried to walk to the bathroom but could not due to severe pain.  *Id.* Tagliatela contends that when he realized he was injured he immediately called his supervisor prior to seeking medical treatment.  *Id.*

Occupation Health Services ("OHS") is a facility/department that performs medical examinations of Metro-North employees.   OHS physicians examine injured Metro-North employees to determine whether they are able to return to work.  [Dkt. #30, Def. Local Rule 56(a)(1) Statement, ¶32].  Metro-North has a policy whereby it pays 100% of reasonable and customary medical expenses for injuries to employees that occur on the job and are considered to be 'occupational' in nature.  *Id.* at ¶33.  Metro-North ceases paying 100% of reasonable and customary medical expenses for on-the-job injuries if an OHS physician determines that those injuries have become "non-occupational."  *Id.* at ¶34.   Where Metro-North ceases paying 100% of the medical expenses for occupational injuries, the employee looks to his or her health insurance to cover the medical treatment.  *Id.* at ¶35.  On April 14, 2008, OHS faxed Tagliatela's doctor, Dr. Weisman" that Metro-North would pay "reasonable and customary medical expenses" for treatment of Tagliatela's injury.  *Id.* at ¶37.

Metro-North policy indicates that an employee may have his or her physician contact Metro-North to document inability to travel if an employee cannot travel to the OHS facility in New York City on the first day that he or she is unable to work. *Id.* at ¶41. On April 15, 2008, Tagliatela visited both his lawyers' office and Dr. Weisman. *Id.* at ¶¶42-43. That same day, Dr. Weissman completed a medical form indicating that Tagliatela could not travel into New York until he was re-evaluated on April 18, 2008. *Id.* at ¶45.

On April 16, 2008, Metro-North ordered Tagliatela to report to OHS for a medical examination on April 21, 2008 and Tagliatela was informed that failure to report to OHS might result in discipline. *Id.* at ¶¶49-50. Tagliatela did not attend the April 21, 2008 appointment but attended an appointment at OHS two days later on April 23, 2008. *Id.* at ¶53. Tagliatela contends that he informed his supervisor that he would attend the OHS appointment if Metro-North would pick him up and transport him to the OHS facility and that on April 21, 2008, he called Metro-North's Scheduling Official and informed her that he could not attend the appointment because he was unable to travel per his doctor's instructions. [Dkt. #36, Pl. Local Rule 56(a)(2) Statement of Material Facts, p.13]

At the April 23, 2008 appointment, Metro-North doctor, Dr. Hamway, classified Tagliatela's injury as "occupational." [Dkt. #30, Def. Local Rule 56(a)(1) Statement, ¶54]. On April 28, 2008, an MRI of Tagliatela's knee was completed which suggested that he had a medial meniscal tear. *Id.* at ¶55.

On May 14, 2008, Dr. Hamway determined that Tagliatela's injury had resolved to the extent it was caused by the workplace accident and that medial

meniscal tear was "non-occupational." *Id.* at ¶58.     Tagliatele was advised that if he desired additional medical treatment, he should seek payment through his private insurance coverage as his residual impairment was not considered occupational. *Id.* at ¶59.

Metro-North charged Tagliatela with violating its policies by failing to report his injury immediately and failing to appear for a required medical appointment at OHS on April 21, 2008.  *Id.* at ¶60.  On May 14, 2008, a disciplinary hearing was conducted at Metro-North regarding those charges at which Tagliatela was represented by his union representative.  *Id.*  On May 22, 2008, Metro-North issued a Notice of Discipline imposing five days of deferred suspension upon Tagliatela for failing to report his injury immediately and failing to appear for the required medical appointment at OHS on April 21, 2008.  *Id.* at ¶62.  Tagliatela asserts that he was disciplined in whole or in part for reporting his injury.  [Dkt. #36, Pl. Local Rule 56(a)(2) Statement, ¶62].

On July 1, 2008, Tagliatela filed a complaint with OSHA claiming that Metro-North violated Section 20109(a)(4) of the FRSA when he was suspended after he reported a workplace injury.  [Dkt. #30, Ex. A, OSHA Compl.].

Tagliatela had also made a personal injury claim against Metro-North arising from the April 12, 2008 incident under the Federal Employers Liability Act, 45 U.S.C. § 51 et seq. ("FELA").  Tagliatela settled his FELA claim and executed a release on May 29, 2009 while his retaliation claim was pending before OSHA. See [Dkt. #30, Def. Ex. R].   The release is titled "General Release" and provides that Tagliatela hereby "release[d] and forever discharge[d] the said Metro-North

Company … from all claims, demands, and causes of action of every kind whatsoever and including, but without limitation of the foregoing all liability for damages, costs, expenses, and compensation of any kind, nature or description now existing or which may hereafter arise from or out of injuries and damages known or unknown, permanent or otherwise, sustained or received by [Tagliatela] at or near Mamaroneck station, State of New York, on or about the 12th day of April, 2008." *Id.* Tagliatela was represented by counsel when he signed the release. [Dkt. #30, Def. Local Rule 56(a)(1) Statement, ¶62].

On June 18, 2009, OSHA issued a merit finding and order in its investigation of Tagliatela's complaint concluding that Metro-North had violated the FRSA. [Dkt. #36, Pl. Ex. 17]. OSHA noted that although Metro-North General Safety Instruction 200.3 and 200.4 which states an employee must immediately report an injury, Metro-North's Operating Procedure states that employees must report all injuries to their immediate supervisors promptly after they occur and before seeking medical evaluation and treatment. *Id.* at 7. OSHA concluded that Tagliatela, the Complainant, "followed both the Operating Procedure and the General Safety Instructions" because "[o]nce he believed he was injured Complainant notified his foreman and then sought medical attention. Complainant couldn't report an injury until he had perceived that he was injured." *Id.* OSHA noted that although Metro-North believed that Tagliatela should have realized he was injured when he iced his knee before going to bed, that belief does not invalidate the premise that Tagliatela reported his injury when he perceived he was injured. *Id.* at 7-8. OSHA also emphasized that the Post

Incident Supervisor's Guide requires prompt not immediate reporting of injuries while the Incident Investigation and Reporting Manual requires the employee and the investigator to immediately report the injury and stressed again that Tagliatela had immediately reported his injury upon becoming aware that he was injured.  OSHA noted that their conclusion was underscored by the Post Incident Management Supervisor's Guide which recognized that employees may not be aware that they require treatment for several days after the initial accident and provides guidance on how to handle the situation."  *Id.* at 8.

OSHA also concluded that Metro-North discriminated against Tagliatela when discipline was imposed for not following the order to go to OHS on April 21, 2008 "because he was following the treatment plan of his treating physician."  *Id.* at 9.  OSHA disagreed with Metro-North's assertion that because Tagliatela was able to go to his private physician he was also able to attend the appointment at OHS in New York City.  OHS emphasized that in order for Tagliatela to attend the OHS appointment, he would have to drive to the West Haven station, walk from the employee parking lot to the train track, and after arriving at Grand Central Terminal he would have had to walk "a great distance from the track where he exits the train over to OHS."  *Id.* at 4.  OSHA points out that even Tagliatela's supervisor "confirmed that it would have been difficult for Complainant to get to OHS." *Id.* Therefore OSHA found that Metro-North's "comparison of Complainant driving to his orthopedist and walking the distance from his car to the doctor's office cannot be compared to the physical travel from Complainant's residence to OHS."  *Id.*

OSHA indicated that after Tagliatela missed the April 21, 2008 appointment he "received many calls that he characterized as harassment compelling him to go to OHS" and informing him that "if he didn't go to OHS he would be disciplined." *Id.* at 9.  On April 23, 2008 when Tagliatela was feeling better, he made the trip to OHS "with the use of a brace on his leg despite the treating physician's order to elevate and ice the knee." *Id.*  In sum, OSHA found that after Tagliatela "engaged in activities that are protected by the FRSA, Respondent imposed a 5 day suspension" and that "absent complainant's protected behaviors he would not have been disciplined." *Id.* at 10.

Lastly, OSHA also expressed concern that Metro-North's "Operating Procedure for attendance and policy for determining whether an employee is eligible for consideration for promotion and craft transfer are on their face a violation of the FRSA." *Id.*  OSHA noted that pursuant to Metro-North's policy, as long as a disciplinary action remains on a complainant's record he is ineligible for promotion or craft transfer. *Id.* at 6.  OSHA ordered that Metro-North amend their Attendance Policy so that sick leave attributed to an occupational injury or illness shall not be included when assessing unsatisfactory attendance, requests for craft transfers or requests for promotion and amend its eligibility policy for craft transfers and promotions so that the reporting of an occupational injury or illness shall not be considered when assessing requests for craft transfers or promotions.  *Id.* at 10.

<u>**Legal Standard**</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon

which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

<u>Analysis</u>

Metro-North argues that it is entitled to summary judgment on several bases.   First, Metro-North argues that the release Tagliatela executed in connection with the settlement of his FELA claim bars his action under the FRSA. Second, Metro-North argues that Tagliatela cannot recovery for any claims made pursuant to Section 20109(c) of the FRSA because the allegedly wrongful conduct occurred after the effective date of the amendment to this statute establishing subsection (c).  Third, Metro-North argues that the classification of an injury as non-occupational does not violate Section 20109(c).  Lastly, Metro-North argues that Tagliatela cannot recover under Section 20109(a)(4) based on the non-occupational classification of his injury because that action was not an unfavorable personnel action.

i.     FELA Release

Metro-North argues that the release executed by Tagliatela in connection with the settlement of his FELA claim bars his claim under the FRSA.   Tagliatela contends that his FRSA claim does not fall within the scope of the release and thus is not barred by the release.  Tagliatela further argues that even if the release did cover his FRSA claim, FRSA complaints under OSHA's jurisdiction cannot be

released without OSHA's express written approval.  Metro-North disagrees with Tagliatela's contention that OSHA must approve all releases and argues that the FRSA claim does fall within the scope of the release.  The Court need not reach the question of whether the release is valid absent OSHA's express approval as it is clear from the terms of the release and the parties' intent that Tagliatela's FRSA claim is not barred.

Connecticut law governs the interpretation of the release, because it was executed in Connecticut and the release does not specify a choice of law.  "It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts .... The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction...." *Muldoon v. Homestead Insulation Co.*, 231 Conn. 469, 650 (1994) (quoting with approval C*hubb v. Amax Coal Co.*, 125 Ill. App.3d 682 (1984)).   "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact ... [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Montoya v. Montoya,* 280 Conn. 605, 613, 909 A.2d 947 (2006) (Internal quotation marks omitted).

Here the language of the release provides that Tagliatela released all claims that "arise from or out of injuries and damages  known or unknown, permanent or otherwise, sustained or received by [Tagliatela] at or near Mamaroneck station,

State of New York, on or about the 12th day of April, 2008." [Dkt. #30, Def. Ex. R]. To the extent that this language is ambiguous, the Court "must construe the contractual terms against the drafter." *Cameron v. Avonridge, Inc.*, 2 Conn.App. 230, 233 (1988) (internal quotation marks and citation omitted). Construing this provision against Metro-North, the release cannot be interpreted to mean that Tagliatela's FRSA claim arose from the injury he sustained when he twisted his knee on April 12, 2008. Rather, his FRSA claim can be interpreted as having arisen from his protected activity of reporting a workplace injury and not the injury itself. Further, the circumstances of the transaction confirm that it was not the parties' intent to release Tagliatela's FRSA claim. When the release was executed on May 29, 2009, the parties had been actively litigating Tagliatela's FRSA claim before OSHA for almost a year. Metro-North was well aware of the existence of Tagliatela's FRSA claim and had they intended the FELA release to be a global settlement or global release of all pending claims, Metro-North would have negotiated to explicitly include the known FRSA claim in that release. The failure to include any language expressly releasing Tagliatela's pending FRSA claim or even language broadly releasing claims brought under employment or whistleblowing laws clearly evinces that it was not the parties' intent to release Tagliatela's FRSA claim.

Metro-North has brought to the Court's attention an administrative decision which concluded that the complainant's FRSA claims were barred by a release the complainant had executed in connection with the complainant's FELA claims. While Metro-North cites this case in support of its argument that OSHA approval

is not necessary to effectuate the release of Tagliatela's FRSA claim, the Court finds this decision to be instructive as to the scope of the release.  *Davies v. Florida East Coast Railway, LLC*, No.2010-FRS-00007 [Dkt. #42, Ex. CC]. In that decision, the Administrative Law Judge concluded that the release on its face was not limited to the release of only the complainant's FELA claim but extended to other claims including claims under the FRSA.  The *Davies* release expressly provided in relevant part that the "release is intended to release all claims of any kind pending against FEC and RPS arising from, or in any way connected to, the subject December 12, 2007 incident, including, but not limited to … claims of retaliation of any kind … and any other state, federal or municipal law, statute, public policy, order or regulation affecting or relating to claims or rights of employees….[and] any torts, including …whistleblowing."  *Id.* at 5.   The Administrative Law Judge concluded that the "phrase releasing claims under any other federal law affecting or relating to the claims or rights of employees, plainly covers claims under the FRSA, as it is a federal statute protecting railroad employees from discharge, demotion, reprimand or any other discrimination, if the discrimination is due to the employees' report of a work injury…" *Id.* at 10.

In the instant case, the narrow scope of the release Tagliatela executed stands in sharp contrast to the expansive explicit release in *Davies*.  In the instant case, there is no corresponding language that neither releases claims arising under other federal law affecting or relating to the claims or rights of employees nor is there language releasing claims related to whistleblowing as was the case in *Davies*.  Further in *Davies*, the release covered all claims arising from or *in any*

*way connected* to the December 12, 2007 incident which stands in sharp contrast to the instant case's release which only covered claims arising from or out of injuries and damages sustained or received by Tagliatela at the Mamaroneck Station on April 12, 2008.  Because the release that Tagliatela executed plainly does not cover his FRSA claim unlike the release in *Davies*, the release does not bar the instant action.  The Court therefore denies Metro-North's motion for summary judgment on the basis that the action is barred by Tagliatela's FELA release.  Since the release does not bar Tagliatela's FRSA claim, this Court need not address whether OSHA approval was necessary to effectuate any such release.

ii.      Section 20109(c)(1) Claim

Metro-North devotes a significant portion of its motion for summary judgment arguing that it is entitled to summary judgment on Tagliatela's Section 20109(c)[1] claim because that subsection was enacted effective October 16, 2008 and does not apply retroactively.  Metro-North further argues that even if the subsection did apply retroactively Metro-North did not violate that subsection as

---

[1] Section 20109(c)(1) provides that a railroad carrier "may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment."  49 U.S.C. §20109(c)(1).  Section 20109(c)(2) provides that railroad carrier "may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician, except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty or, if there are no pertinent Federal Railroad Administration standards, a carrier's medical standards for fitness for duty. For purposes of this paragraph, the term "discipline" means to bring charges against a person in a disciplinary proceeding, suspend, terminate, place on probation, or make note of reprimand on an employee's record."  49 U.S.C. §20109(c)(2).

it did not deny, delay or interfere with Tagliatela's medical treatment.  In his opposition to the motion for summary judgment, Tagliatela clarifies that he never brought a claim for violation of 20109(c) before OSHA or in the instant case.  See [Dkt. # 35, p. 10; Dkt. #43, p.6].  Tagliatela stresses that he is only asserting a claim for violation of Section of 20109(a)(4).

   iii.   Section 20109 (a)(4) Claim

   Lastly, Metro-North argues that Tagliatela cannot recover under Section 20109(a)(4) based on the "non-occupational classification of his injury because that action was not an unfavorable personnel action."   [Dkt. #31, p. 27-30]. Tagliatela fails to address or respond in any way to Metro-North's motion for summary judgment on this basis.  It is well established that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.2003); *see also Robinson v. Roosevelt Union Free Sch. Dist.,* No. 10–CV–834, 2012 WL 1980410, at *6 (E.D.N.Y. May 31, 2012) (deeming plaintiff's claim abandoned where defendant moved for summary judgment on that claim and she failed to address it in her opposition brief); *Gaston v. City of New York,* No. 11–CV–4750, 2012 WL 1085804, at *12 & n. 31 (S.D.N.Y. Apr. 2, 2012) (dismissing plaintiff's claims as abandoned where plaintiff "failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion") (collecting cases); *Robinson v. Am. Int'l Grp., Inc.,* No. 08–CV–1724, 2009 WL 3154312, at *4 (S.D.N.Y. Sept. 30, 2009) ("Plaintiff [in her opposition to summary judgment] has failed to

address defendants' arguments against or even mention several of the claims.... She therefore has abandoned these claims."), *aff'd,* 396 F. App'x 781 (2d Cir.2010); *Coger v. Connecticut*, 309 F.Supp.2d 274, 280 (D.Conn.2004) (noting that the court can consider a [§ ] 1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument that summary should be granted in his favor).  Because Tagliatela fails to address his claim that he was retaliated against by Metro-North in violation of the FRSA when it reclassified his injury as non-occupational in response to Metro-North's motion for summary judgment, the Court deems Tagliatela to have abandoned his FRSA claim based on the reclassification of his injury.   The Court therefore grants Metro-North's motion for summary judgment as to Tagliatela's FRSA claim based on the reclassification of his injury.[2]

It is clear from both the allegations in the complaint as well as Tagliatela's opposition to Metro-North's motion for summary judgment that his Section 20109 (a)(4) claim was not solely predicted on the reclassification of his injury but also on his five day suspension without pay.  In the complaint, Tagliatela alleges that he engaged in protected activity when he reported a work-related injury to Metro-North, Metro-North was aware of this activity, and that Metro-North "took adverse or unfavorable actions in whole or in part due to his protective activity when it …charged him with disciplinary offenses based on his protected activities,

---

[2] It is not surprising that Tagliatela is not pursuing a FRSA claim on the basis of the reclassification of his injury as he appears to have already recovered any damages he would have had from the reclassification when he settled his FELA claim for the personal injuries arising from the injury he sustained on April 12, 2008.

threatened him with a waiver, subjected him to a disciplinary trial; and assessed discipline against him, including suspension without pay."  [Dkt. #1, Compl., ¶¶19-22].  In his opposition to summary judgment, Tagliatela argues that he has submitted evidence establishing all four elements of an FRSA violation.  [Dkt. #35, p. 10-11]. Tagliatela contends that there is no dispute that he engaged in protected activity when he notified Metro-North of his work-related injury, that Metro-North was aware that he engaged in a protected activity, and that Metro-North subjected him to "the adverse action of a disciplinary suspension."  *Id.* Tagliatela further argues in his opposition that "[b]ecause there is sufficient evidence establishing that Metro-North's disciplinary suspension of Tagliatela was due 'in whole or in part' to his protected (a)(4) activity of reporting an injury, summary judgment is inappropriate."  *Id.* at 20.  Because Metro-North has not moved for summary judgment as to Tagliatela's FRSA claim based on his five-day suspension, Tagliatela's FRSA claim on this basis remains extant for trial.

<u>Conclusion</u>

For the foregoing reasons, the Court DENIES IN PART AND GRANTS IN PART Metro-North's motion for summary judgment.  Tagliatela's FRSA Section 20109 (a)(4) claim on the basis of his five day suspension will proceed to trial in January 2013.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

18

**Dated at Hartford, Connecticut: November 13, 2012**